# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|                        |   |                          |
|------------------------|---|--------------------------|
| **TIMOTHY CLARK,**     | ) |                          |
|                        | ) |                          |
| **Plaintiff,**         | ) |                          |
|                        | ) | **Civil Action No.**     |
| v.                     | ) | **09-40040-FDS**         |
|                        | ) |                          |
| **RICHARD B. EDISON,** | ) |                          |
|                        | ) |                          |
| **Defendant.**         | ) |                          |

# MEMORANDUM AND ORDER ON
# MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a civil lawsuit based on an alleged sexual abuse of a minor that plaintiff contends occurred nearly forty years ago. Jurisdiction is based on diversity of citizenship. Plaintiff Timothy Clark alleges that he was sexually abused by defendant Richard Edison repeatedly between 1974 and 1977. He did not, however, bring suit until November 2008. He contends that he repressed any memory of the experience until 2008, when memories of the abuse suddenly returned to him while he was visiting his mother's grave with his brother.

Defendant has moved for summary judgment on the ground that the action is barred by the applicable statute of limitations. For the following reasons, the motion will be denied.

## I.   Background

The facts are set forth in the light most favorable to plaintiff, the non-moving party, except where otherwise noted.

Timothy Clark was born in 1963. After his parents divorced, Timothy lived with his

mother and his two brothers, Michael and David Clark. In 1974, when he was ten years old, the Clarks lived in Shrewsbury, Massachusetts, in an apartment complex known as Shrewsbury Gardens.

Richard Edison also resided at Shrewsbury Gardens in 1974. At the time, he was a student at the University of Massachusetts Medical School. The Clark brothers knew Edison and would visit his apartment and listen to music with him. Their mother believed Edison was a child molester and attempted to prevent her children from spending time him. However, the boys continued to associate with Edison.

Edison allegedly provided the children with marijuana and would take Timothy into his bedroom, alone, where he sexually abused him. On certain occasions, Michael was present in the other room while those events occurred. Their mother frequently urged Michael to prevent Timothy from being near Edison, but Michael disobeyed his mother, in part to ensure his continued access to marijuana.

In 1975, the Clark family moved to an apartment in a complex known as Brandywine Village. Edison also moved to Brandywine Village during that year, and the Clark children continued to visit him there despite their mother's objection. Edison allegedly continued to abuse him sexually during that period, and that their mother frequently scolded the children for visiting Edison and sought to prevent him from having any contact with them.

At an unspecified time, the Clark family moved to a new apartment at Lincoln Village in Worcester, Massachusetts. On one occasion, Timothy and his friend Howard Gallant skipped school to visit Edison. Their parents learned of these events, and, in early 1977, filed a "disturbing the peace" complaint against Edison in the Massachusetts District Court. Timothy

2

went to court with his mother for a hearing on that matter, but he was taken outside of the courtroom for much of the proceeding. The action was dismissed, and no criminal charges were brought. The Court, however, ordered Edison to cease his interactions with the Clark and Gallant children. Timothy Clark had no further contact with Edison.

According to Clark, for most of his adult life he retained no memory of the sexual abuse he suffered in those years. However, in May 2008, he experienced a sudden flood of memories while visiting his mother's grave with his brother Michael. These memories included episodic visions of his interactions with Edison, including memories of explicit sexual contact. In the months following that experience, Clark suffered severe emotional reactions to the memories. He received psychological treatment from Erik D. Nelson, who identified symptoms of post-traumatic stress disorder that he believes derive from childhood sexual abuse.[1]

Edison left Massachusetts in the late 1970s; he currently resides in Fort Lauderdale, Florida. In 2008, Clark hired a private investigator to locate him, which he did without difficulty. On November 24, 2008, Clark filed this action in the Massachusetts Superior Court. Edison removed the case to this Court on the basis of diversity jurisdiction. Edison has now moved for summary judgment that the action is time-barred under the applicable statute of limitations.

## II. Standard of Review

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party

---

[1] In preparation for this litigation, counsel for Clark also retained Dr. James W. Hopper, a clinical psychologist, who evaluated Clark's recollections of childhood abuse and related psychological conditions.

3

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

## III.  Analysis

In Massachusetts, an action for assault and battery alleging sexual abuse of a minor is generally subject to a three-year limitations period. Mass. Gen. Laws ch. 260, § 4C.[2] Because the alleged misconduct at issue occurred more than three decades ago, defendant argues that the action is time-barred. Plaintiff contends that the limitations period was tolled or, alternatively, that the accrual of his claim was delayed until he regained his memory of the alleged abuses in 2008.

### A.  Tolling During Plaintiff's Period of Minority

Mass. Gen. Laws ch. 260, § 4C provides that "the time limit for commencement of an action [for sexual abuse of a minor] is tolled for a child until the child reaches eighteen years of age." *Id.* Because plaintiff was born in 1963, the limitations period on any claim that accrued in the 1970s was automatically tolled until 1981, when he turned eighteen. The limitations period thus expired in 1984 unless it was otherwise tolled or the date of accrual was delayed.

---

[2] In a diversity action, limitations issues are governed by state law. *West v. Conrail*, 481 U.S. 35, 39 n.4 (1987).

4

## B. Tolling During Defendant's Out-of-State Residency

Mass. Gen. Laws ch. 260, § 9 provides, in relevant part:

"[I]f, after a cause of action has accrued, the person against whom it has accrued resides out of the commonwealth, the time of such residence shall be excluded in determining the time limited for the commencement of the action."

Plaintiff asserts that, under this provision, the running of the three-year limitations period has been tolled since defendant left Massachusetts in the late 1970s.

The purpose of the statutory toll for a defendant's out-of-state residency is "to prevent a potential defendant from insulating himself from liability by placing himself for a time beyond the reaches of the law for purposes of service." *Walsh v. Ogorzalek*, 372 Mass. 271, 274 (1977). The statute was enacted before the recognition of long-arm jurisdiction. *Doyle v. Shubs*, 717 F. Supp. 946, 950 (D. Mass. 1989). Today, Massachusetts courts have jurisdiction over out-of-state defendants pursuant to the state's long-arm statute if the alleged tort occurred within the state, and the statute authorizes service of process on any individual over whom personal jurisdiction may be asserted. *See* Mass. Gen. Laws ch. 223A, §§ 3(c), 4. Given the expanded reach of state courts with respect to service, the Supreme Judicial Court in *Walsh* rejected a literal reading of the statute and held that ch. 260, § 9 applies only to nonresidents "beyond the jurisdiction and process" of the Massachusetts courts. 372 Mass. at 274. *See also Woodcock v. American Inv. Co.*, 376 Mass. 169, 176 (1978).

Nonetheless, the court in *Walsh* limited its holding to cases "where the name and location of the defendant are known to the plaintiff" and explained that "[t]he period of limitations may be tolled in a case where, for a time, that information is not available to the plaintiff." 372 Mass. at 275. At least one court has interpreted that exception to contain a causation element. *See Doyle*,

717 F. Supp. at 950. In *Doyle*, the court held that "tardiness in commencing litigation [against a defendant susceptible to long-arm jurisdiction] will be excused only when it results from the plaintiff's lack of knowledge of the defendant's whereabouts." *Id.* That limitation was deemed appropriate because "[a] more indulgent reading of *Walsh* would achieve what the Supreme Judicial Court expressly sought to avoid; it 'would allow suits to be postponed indefinitely, for no good purpose, and to be brought in some cases at the virtually unlimited pleasure of the plaintiff.'" *Id.* (quoting *Walsh*, 372 Mass. at 274).

In *Walsh*, the court noted that the extent of a plaintiff's knowledge and the availability of information concerning the whereabouts of a defendant "could conceivably be a question of fact for a judge and might even require the hearing of evidence where the issue is disputed." 372 Mass. at 275. In this case, no hearing is required. Plaintiff unequivocally asserts that his delay in bringing suit was caused by his inability to remember the events at issue until he suddenly recovered those memories in 2008. (Compl. ¶ 4). After that experience, plaintiff was able to locate defendant quickly using of a private investigator. (Clark Aff. ¶ 2). He does not contend that he was unable to locate defendant's whereabouts, nor does he even suggest that it may have been difficult. Thus, any difficulties in locating defendant did not contribute to plaintiff's delay in commencing this action, and the tolling provisions of Mass. Gen. Laws ch. 260, § 9 do not apply. The action is therefore time-barred unless the date of accrual was substantially delayed.

### C. Statutory Discovery Rule

Mass. Gen. Laws ch. 260, § 4C contains an explicit discovery rule.[3] That rule provides:

---

[3] With respect to other tort causes of action, Massachusetts courts have fashioned a similar, common-law discovery rule that applies when the underlying facts giving rise to a claim remain "inherently unknowable," a standard that is "no different from, and is used interchangeably with, the 'knew or should have known' standard."

> Actions for assault and battery alleging the defendant sexually abused a minor shall be commenced within three years of the acts alleged to have caused an injury or condition or within three years of the time the victim *discovered or reasonably should have discovered* that an emotional or psychological injury or condition was caused by said act, whichever period expires later[.]

Mass. Gen. Laws ch. 260, § 4C (emphasis added). The statute thus delays accrual of a cause of action for sexual assault of a minor until the potential plaintiff has "first, an awareness of [his] injuries and, second, an awareness that the defendant caused [his] injuries." *Doe v. Creighton*, 439 Mass. 281, 283 (2003).

With respect to both elements, the plaintiff bears the burden of proving both a subjective, or actual, lack of knowledge and that his lack of knowledge was objectively reasonable. *Id.* The objective reasonableness of a plaintiff's lack of knowledge is determined from the perspective of "a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint." *Riley v. Presnell*, 409 Mass. 239, 245 (1991). That analysis focuses "on the nature of the abusive conduct, the injuries that the abuse inflicted, and the effect that both would have had on the causal understanding of an ordinary, reasonable person." *Creighton*, 439 Mass. at 284.

Massachusetts courts have recognized claims of "repressed memory," in which the plaintiff contends that he had no memory of the alleged sexual abuse, and therefore no awareness of any resulting injury or its cause, until a subsequent triggering event recalls those memories years later. *See, e.g.*, *Hoult v. Hoult*, 792 F. Supp. 143, 145 (D. Mass. 1992) (denying summary judgment for defendant where plaintiff had no memory of sexual abuse until after the expiration of

---

*Williams v. Ely*, 423 Mass. 467, 474 n.7 (1996); *see also Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 64 (1st Cir. 1997).

the otherwise-applicable limitations period). In cases of alleged memory repression, the accrual of the claim normally occurs on the date the plaintiff first recalled that the incidents of abuse occurred.

However, total memory repression is not necessary to delay the accrual of the cause of action under Massachusetts law. Thus, a victim who remembers being sexually abused may nonetheless lack knowledge of injury if a he "was not aware that he had suffered any appreciable or legally recognizable harm." *Ross v. Garabedian,* 433 Mass. 360, 366 (2001) (internal quotation omitted). According to *Ross*, even a victim's contemporaneous knowledge that a defendant's sexual advances were "wrong" and "shameful" does not necessarily show knowledge of "harm" sufficient to trigger the accrual of the action as a matter of law. *Id.* at 364-66 ("A rational finder of fact could find that the plaintiff, a teenager at the time, felt shame or a sense of wrong because his conduct was contrary to accepted church or family morals, but he was not aware that he had suffered any appreciable or legally recognizable 'harm.'").

Similarly, under Massachusetts law, even a plaintiff who is aware of the misconduct may not become immediately aware of the causal connection between that misconduct and subsequent emotional or psychological injuries. *See Riley*, 409 Mass. at 246 (reversing summary judgment for defendant where expert testimony suggested that plaintiff reasonably failed to recognize the causal connection between earlier abuse and subsequent symptoms of psychological trauma). In *Riley*, the court reasoned that psychological damage from sexual abuse is a kind of "injury to the mind" that "by its very nature prevents the discovery of its cause." 409 Mass. at 246; *see also Creighton*, 439 Mass. at 285 (recognizing that "a person who is victimized at an early age or over a period of years might, later in life, perceive the resulting psychological symptoms as having

8

always been present and thus fail to connect them to a particular triggering event"); *Armstrong v. Lamy*, 938 F. Supp. 1018, 1038 (D. Mass. 1996) (holding that uncertainty about how a child perceives sexual abuse may create genuine disputes of fact as to whether an experience "did or should have put [a plaintiff] on notice, at the time of the contact, that [the defendant] had caused him injury.").[4]

Here, plaintiff has raised issues of disputed material fact as to both the subjective and objective components of the inquiry. The first issue concerns plaintiff's alleged subjective inability to remember the abusive conduct at issue until 2008. While defendant points to countervailing evidence, that evidence is not sufficient to compel summary judgment in his favor.

Defendant points to the report of Dr. Hopper, which states that "it does not matter whether or not Tim Clark ever remembered being abused by Richard Edison before he reported recalling those events in May of 2008. Thus this report will not attempt to argue, let alone prove, that in May of 2008 Tim Clark 'recovered' his memories of sexual abuse by Richard Edison *for*

---

[4] In *Koe v. Mercer*, 450 Mass. 97 (2007), the plaintiff alleged that the defendant sexually assaulted him in 1983. The plaintiff brought suit in 2002 after realizing, during therapy, the causal link between the childhood incident and emotional distress he experienced as an adult. Although the court held the action time-barred, it did so because the causal link had become clear during a session more than three years before he filed suit. *Id.* at 102. *See Phinney v. Morgan*, 39 Mass. App. Ct. 202, 208 (1995) (holding that while plaintiffs "may not have been aware of the full extent of their psychological damage" until later in life, the evidence was sufficient to establish that "a reasonable person in their position would have possessed knowledge or sufficient notice that they were harmed and what the cause of the harm was much earlier").

In *Flanagan v. Grant*, 897 F. Supp. 637 (D. Mass. 1995), a daughter whose father had sexually abused her for years as a teenager argued that she had failed to connect her father's conduct to the harm she experienced in the years following that period. The daughter twice had sought criminal prosecution of her father, once during the period in which it occurred and once several years later. She had also sought psychiatric treatment and been diagnosed with post-traumatic stress disorder. *Id.* at 639-40, 643. The court inferred from this behavior that, even if "plaintiff did not fully experience the extent of the damage inflicted by her father, she nevertheless realized that her father was the likely cause of her injuries prior" to any date that would render her suit timely." *Id.* at 643. The court thus focused on when the plaintiff "intellectually recognized the cause of her injuries" rather than when she realized their scope. *Id.* at 643.

*the first time* since he was a teenager." (Hopper Rpt. ¶ 53).[5] But Dr. Hopper goes on to assert that a trauma victim may at times recall partial memories of childhood abuse without forming any lasting memory of that moment of remembrance. Thus, he states, "a subsequent recovery experience is more likely to be judged as novel, creating the experience of discovering a memory for the first time." (*Id.* ¶ 65). And he asserts that "we simply cannot know . . . whether on previous occasions during [plaintiff's] adult life he retrieved explicit memories of sexual abuse by Richard Edison." (*Id.* ¶ 64). Whether this is credible or not, it is not an admission or concession sufficient to require summary judgment in defendant's favor as a matter of law.

Defendant also points to the deposition of plaintiff's brother, Michael Clark. Michael Clark testified that he and his brother had a conversation shortly after plaintiff's alleged recovered memory experience in 2008, when plaintiff told Michael that he had been abused by defendant as a child. He testified:

> Q: Did you say anything else [to Mr. Clark after he told you he was a abused by Mr. Edison]?
> A: I said, "Got to be hard holding that in all these years."
> Q: What did he say?
> A: "You don't know."
> Q: What did you mean when you said it's "got to be hard holding that in all these years?"
> A: Knowing that you were molested and just keeping you mouth shut and just holding it in? I mean, I don't know if I would have been able to do that.

(M. Clark Dep. 187-188). Defendant offers these statements as proof that plaintiff actually knew of the abuse prior to 2008. But that overstates the force of the evidence; plaintiff's response is

---

[5] Dr. Hopper states that "repressed memory" is a misleading characterization of plaintiff's experience because it technically describes only one possible mechanism for the observed phenomenon. (Hopper Rpt. ¶ 54). This distinction is not critical to the analysis at this stage of the case. *See Armstrong*, 938 F. Supp. at 1039 (referring to similar circumstances as a "repressed memory" case at the summary judgment stage).

sufficiently ambiguous that a conclusive inference is not possible.

The second issue is whether plaintiff's alleged inability to remember the abuse was objectively reasonable. Defendant contends that plaintiff's lack of knowledge, if real, was unreasonable. He points out that plaintiff's mother told him to stay away from defendant, filed a legal complaint against defendant, and eventually succeeded in preventing further interactions between defendant and her children. (D. Mem. in Supp. at 13-14; P. Answers to Interrog. No. 5). Defendant also points to evidence that, as a child, plaintiff was warned that defendant was a "child molester." (M. Clark Dep. 183-84). Those facts, however, are not necessarily inconsistent with plaintiff's alleged lack of causal knowledge. Among other things, proof that plaintiff was aware that defendant's conduct was "contrary to accepted . . . family morals," standing alone, is insufficient under Massachusetts law to prove that a reasonable person would infer knowledge of injury and causation. *See Ross,* 433 Mass. at 366. Moreover, there is evidence that plaintiff did not recall that his mother pursued legal action against defendant until he remembered the abuse itself, in 2008. (Hopper Rpt. ¶ 102).

Defendant also points to an interrogatory answer in which plaintiff acknowledges a longstanding "profound or deep feeling of being invaded or being violated in a fundamental way" and a "nagging . . . or uncomfortable feeling that something had happened with the defendant when I was in my teens[.]" (P. Answers to Interrog. No. 7). Plaintiff subsequently amended his interrogatory answers to indicate that the second of those statements does not indicate a specific connection between his emotional distress and the experience of being abused as a child. Defendant asks the court to view this amendment as a manipulation of the facts in an attempt to manufacture doubt so as to survive summary judgment. That argument, however, goes to the

credibility of plaintiff's factual assertions and is properly suited for determination by a jury.

On the whole, the evidence cited by defendant does not require judgment as a matter of law. This Court, of course, takes no position on the validity of plaintiff's claims as a factual matter; the only question presented at this stage is whether Massachusetts law requires summary judgment for the defendant. For the reasons stated, the question of whether the discovery rule under Mass. Gen. Laws ch. 260, § 4C delayed accrual of his cause of action until 2008 must be left to the jury to decide, and the motion of defendant for summary judgment will accordingly be denied.

**D.     Motions to Strike**

Plaintiff has filed three motions to strike portions of defendant's briefs and evidentiary submissions. In light of the denial of defendant's motion for summary judgment, those motions will be denied as moot.

**IV.    Conclusion**

For the foregoing reasons,

1. the motion of defendant for summary judgment that the action is time-barred under Mass. Gen. Laws ch. 260, §§ 4C and 9 is DENIED;

2. the motion of plaintiff to strike the affidavit of David Clark is DENIED as moot;

3. the motion of plaintiff to strike portions of the motion of defendant for summary judgment is DENIED as moot;

4. the motion of plaintiff to strike defendant's reply memorandum is DENIED as moot.

**So Ordered.**

                                                                 /s/ F. Dennis Saylor  
                                                                 F. Dennis Saylor IV  
                                                                 United States District Judge

Dated:  January 24, 2012